## BRIDGES *a.* HYATT.

*Supreme Court, First District; General Term, February,* 1856.

COMPETENCY OF ASSIGNOR.—SECONDARY EVIDENCE.

One who has made an absolute assignment of a claim, may be called as a witness for his assignee in a suit upon the claim, notwithstanding that the assignment contains a covenant that a specified sum is due upon it.

Of liquidated damages, as compared with a penalty.

What evidence of the loss of papers, is sufficient to admit secondary evidence of their contents.

Appeal from a judgment entered by plaintiff on the report of a referee.

MITCHELL, J.—The plaintiff sues as assignee of Hynard, a builder, for work done by Hynard for the defendant. Defendant had a lease of No. 446 Pearl-street, and Hynard worked by day's work altering it, and finished his work by May 1, 1848, and was paid all but a balance of $28. Defendant after this, got possession of the adjoining house and lot No. 444 Pearl-street, and Hynard contracted with him to alter this building also, and to erect a two-story building on the rear of both lots according to plans and specifications. This was done by July 15, 1848. Hynard testified that the defendant owed him for said balance of $28—and for $16 52 of interest, and for extra work, the sum of $281 29, and that he rendered defendant a bill for the whole with items. The referee disallowed the interest and one other item, and allowed the defendant for the difference between the glass furnished and that contracted for, $20; for the omission of corner plates, or shutters, $6; and for a sum received by Hynard, $5; and reported $227 77, in favor of the plaintiff.

Hynard proved an absolute assignment by him to the plaintiff with a covenant that $281 29, was then due to him.

It was objected that Hynard was not a competent witness. In Freeman *v.* Spalding, (2 *Kernan,* 573), it was held that a residuary legatee was a competent witness for an executor

plaintiff, that he was not a person for whose immediate benefit the action was brought—that that designation of person, applied only to one into whose hands the money will *necessarily* go when received, or one who might take it from the attorney or sheriff, as his own. Under that decision, Hynard was clearly competent in the case.

Hynard was to lay dwarf-walls and bridge the beams, and he did not do that. He says it became unnecessary in consequence of the defendant's agreeing to have floor of the rear buildings on a level with those in the front buildings, and not above the level of those last, as first intended; and that this alteration made it necessary to excavate earth from the site of the rear buildings.

He was thus saved the expense of making the dwarf-walls, and of bridging the beams, yet no deduction is made on that account, and he charged extra for the excavation $58.

He says the defendant was present and said, " you will get rid of those dwarf-walls, by having the beams bedded in the solid earth." This was equivalent to a consent of each to offset one work against the other. The $58 should be deducted.

By the contract the whole work was to be finished by the 22d day of June, 1848, or otherwise, the builder was to pay the owner $25 per day for damage. It was not completed until the 16th of July—a difference of nineteen or twenty working days.

Hynard says he was delayed in completing the work: first, because "there was *considerable* rainy weather, and this delayed him," and in the next place, by the digging out of the earth from the yard he could not get along with the work, and it took eight days to dig it out. He says the extra work was done before the 15th of July, and partly before the 22d of June, and to that he attributes part of the delay.

The claim for damages is by the contract put in the form of liquidated damages. At the same time it partakes of the character of a penalty. If, in a job like this, when the builder was to be paid $2,600, he had been unable to go on with the work, and left a *small part* of it unfinished for 104 days—it could not have been the intention that he should be paid nothing for his work. Unless the intent appears clearly

to the contrary, or the delay was caused wilfully or by care-lessness, it will best comport with the understanding of the parties not to allow these punitive damages, if the party claiming them has varied the contract in such way as may have contributed in any considerable degree to the delay. (Holmes *v.* Gapney, 3 *Mees. & W.*, 387). Here the builder himself explains the cause of delay; he attributes part of it to the rainy weather, part to the digging of the earth, and part to the extra work. The risk of the weather he assumed by making no exception on that account; he concurred in the change of the work, and was saved from doing other work by doing the excavation.

After it was shown that the contract was changed, if the plaintiff could recover for the delay, the burden of proof was on him, and he should show that the delay was but slightly produced by the changes, or that it was caused by the builder's negligence or fault.

The defendant testified to a great many imperfections in the work. He was confirmed in them by Reed, a disinterested witness, opposed in part by Hynard.

Reed says four rows of bridging were to be put in, and only two were put in; the two left undone would be worth $5 75. The floors would cost $25 more if they had been laid accord-ing to contract. The roof is not near the specification; it is of *old* stuff (and this is not, as to half of it, denied): The difference in cost would be $30; the difference in value much greater. The difference between the skylights as specified and as made, he makes $40. The difference between the railing around the well-holes and the partitions, $22; the difference in the roof of the front building, $17 50; in the ceiling, $15, and some other items. None of these amounting to $155 25, are allowed by the referee, except $20, for the difference of glass in the skylight.

The referee was inclined to the opinion that the defendant could not recoup for the imperfections in the contract work, as this action was for the extra work. The answer is that when extra work is done which causes an alteration in the original contract, the original and the new contract make together but one contract, and accordingly it has been held

that the original is to be followed still, as far as practicable. He, however, did not rest his conclusions on that point, but on the omission of defendant to set up some of the matters in his answer, and others not being established to his satisfaction, and others being waived or assented to by the defendant.

There is some evidence that old boards are as good for roofing as new, (although it is not likely that any one would ever use the old for his own house), and that the skylights were not more than $20 cheaper than the contract, and that the railing around the well-holes was made of pine, and to please the defendant; under the circumstances it is not proper to interfere with that part of the report. It is not shown to be clearly against the weight of evidence.

The referee admitted secondary evidence of the plans, after proof that Hynard had left them at Purss's shop, and that he went there to look for them and saw Purss, who told him to look in his desk for them, and when he did so and could not find them there, Purss told him, as he said, that he must have torn or burned them up. The defendant had before testified that he last saw the plans at Purss's shop. Evidence as to the loss of a paper is addressed to the court, and is not governed by the rules of evidence applicable to testimony addressed to a jury; hearsay may be received. In this case it was received as part of the declaration of the party who had had the paper in his possession or control when it was last seen by the defendant; and a search in his desk without any declaration from him would have been sufficient.

The $58 allowed for excavation should be deducted without costs to either party, on the appeal, and the report be affirmed if the plaintiff consent to this; otherwise a new trial should be had, without costs of appeal to either party.